Good morning, Your Honor. Martin Overman on behalf of the Plaintiffs. Good morning, Your Honor. It's Michael Truckel on behalf of the defendant, Anthony Quarles & Brady. Good morning, gentlemen. We have scheduled 30 minutes for this case with the time being divided equally. The appellant may reserve a few minutes of his time for rebuttal. I would like to do that, Your Honor. Give me about five minutes. Okay, we'll proceed. Thank you. May it please the Court, I am Martin Overman on behalf of the Plaintiffs here and Appellant Kenneth Nelson. As I'm sure the Court well knows, we're here on a 2615 motion ruling, and the standard is strong. Only if we can prove no set of facts to win should that motion have been granted. I think we can boil this case down. There are several allegations of negligence, but you can really boil this case down to the principal count. The client, Mr. Nelson, walks into his lawyer's office in 2005, and he says, I've got this notice of exercise of an option under an old 16-year-old contract I had which granted stock options. Under this notice, he's saying I hereby demand to purchase 193 shares. Here's the old contract. He gives it to his lawyer. The contract says you have an option to purchase 2009 shares. Now, there was a second option. The numbers were also off. What does the lawyer do? What's the first thing he does? He says, well, let me take a look at the law. If a lawyer doesn't have it in his head, most of us wouldn't have it memorized. You look at the Illinois case law, and it's clear. In order to exercise an option, you must adhere precisely to the terms. No matter what those terms are, you've got to do it exactly. And the Seventh Circuit says the same thing. We cite the cases at page 19. Nobody denies this. Quarles and Brady doesn't deny that that was an ironclad defense. We allege that had that defense to the exercise of the options been argued, when Mr. Nelson said, well, can you get me out of these options, that it would have won. We allege it. It's not contested. There's no argument. Nobody challenges the law on options in our briefs. And if he would have won, there obviously wouldn't have been a specific performance order entered against Mr. Nelson to sell the stock. That's what caused the harm, because when that stock got sold pending appeal, because there was no stay, Mr. Curia ruined the dealership. He loaded it up with millions of dollars of debt. It was already at that point too late to undo the damages. Quarles never has argued in this case, never denies, that it completely failed to raise this argument. They don't make a claim that there was some tactical decision. They thought about it, decided not to argue it. They don't say there was some strategic advantage. We decided to go this way, that way. Well, they haven't at this point, but they have alleged what other states have called judgmental immunity. They've raised that as a legal defense, but they haven't said what the immunity is based on. That's the problem with this case. On the record that's here on the complaint, we allege there was no advantage to disbanding it. There was no judgment to be made. There is no Illinois case. They cite Goldstein, which was a combined 615, 619 motion. I have found, and they have found, no pure 615 motion in which you can decide, at least on facts like this, that there was a judgment made and therefore they're entitled to immunity. You have to know what the facts are. Now, maybe on discovery, in all these cases that deal with judgmental immunity, there's a factual record. But doesn't it really rely on a 2615 on whether there are sufficient facts pled to allow you to be able to prevail under some set of facts at the trial? Yes. So don't we then look directly at the complaint to determine whether or not that standard has been met? Yes, Your Honor. There's no question. But what are the facts in the complaint? The facts in the complaint are this defense was not raised, period. There's not even any indication in the complaint, obviously we don't know, that they even thought about this defense. Suppose the facts came out in this case on discovery that it never occurred to them. They never looked at the law. They never found these cases. They just were ignorant of it and didn't research it. That would not be an error of judgment. That would be negligence. And we don't know that at this point. And they could have had a 619 motion where they brought in a memo saying, look, we considered this. Maybe it was dumb, but we made a judgment. But they didn't choose to do that. So we're stuck. We didn't get any discovery. You could never have a malpractice complaint on a failure to raise a defense. Look, if facts against sight, which we cite, the defendant was found liable for a million dollars in attorney's fees. At the attorney's fees hearing, the lawyer never raised the argument that she wasn't even covered by the fee-shifting agreement. He just let it go. They sued. It was a 615. And 615 was granted. And this court overturned it. And all the plaintiff could allege in that case is what we allege. I had a defense. You didn't raise it. You know, I put out the analogy in our brief, reply brief. It seems to me this is quite the same. A defendant runs a red light, hits a pedestrian, gets sued for damages, comes to a lawyer to defend him in the case. The lawyer gets the facts. He's got two facts. A, the statute of limitations is run on the plaintiff's claim. But B, I've got an eyewitness who says the light was red, not green. The lawyer, let's say, thinks about it and says, I'll tell you what I'm going to do. I'm going to waive the statute of limitations, assure fire winner, and let's go to trial because I think the jury will believe our witness. Go to trial. The jury doesn't believe the witness. The defendant loses the case. If that client then sues the lawyer and says, you committed negligence for failing to raise the statute of limitations, do we need to know any more to say that that states a claim? I mean, the standard is, and it's considered a factual question, and we raise it in our complaint, Your Honor, whether a matter is an error of judgment is a question of fact, usually decided by expert testimony. That's what all the cases say. So the only way you can decide this, it's not unlike a medical malpractice case where we allege. It seems to me it's the same thing. I mean, the doctors could use this to get out of trial free every day of the week. Every time until you could get facts. They always say I made a judgment. The question is, was it a judgment that was consistent with what a reasonably careful attorney would do? So at this stage, you know, the trial judge said, I assume this was not a lack of preparation, in effect. But that's not in the complaint. And even if you wanted to extrapolate, you know, Quarrel says in their brief, well, every lawyer, everything involves a judgment. But 2615 says you can't draw inferences, pull things out of the complaint that are there in favor of the defendant. 2615 says you've got to draw reasonable inferences from the facts pled in favor of the plaintiff. And we allege they didn't raise it and that there was no reason not to raise it. That's what we allege. And we incorporated by reference expert opinion. I think it's true. It's not normally done. But to emphasize what we're trying to talk about, we thought that would help the record. And Judge Lawrence allowed us to put that in the record. But whether it's in or not, you would take the position that the facts pled in the complaint would be sufficient in and of themselves. We do, Your Honor. Yes, we do, Your Honor. It was really, you know, frankly, I think the Gelsomino case covers this clearly. In Gelsomino, you know, it's not unlike Gelsomino. In Gelsomino, they went to trial and the defense lawyer didn't call certain witnesses. And he said just not calling them was a professional judgment. And this court said, no, that's a question for expert testimony. And in that case, there were two expert affidavits. And I thought I could try to demonstrate to the trial judge why this case was like Gelsomino. So we thought we asked for leave to put the expert. I don't disagree. The complaint lays it out clearly what we think it is based on. And by the way, this is not an area, even if you went beyond, this is not an area where the law is unsettled or close. The law on options, and we cited it in the brief, and again, they don't even argue it in the brief. It's black letter rule. So this is not one where the lawyer said, gee, I'm not sure if those cases apply. That law is well settled, crystal clear. It's not a fine point that nobody knows how a court would rule on it. You know what? I've covered everything. Unless the court has some other questions, I'm going to take my time. Press the mute button. Yeah. I learned that a long time ago. Thank you, Your Honor. Mr. Chekov. Thank you, Your Honor. Good morning, Your Honors. Once again, Michael Chekov on behalf of the defendant at Blast. Good morning. Importantly here, on the pleadings of the third amended complaint, which Mr. Oberman has ignored in his brief and has ignored in his presentation to the court, is the fact that it wasn't just the 1989 option agreement that Mr. Nelson walked into Quarles and Brady's office with. It was also the 1993 modification. And so under the circumstances of that was what Mr. Quarles and Brady was presented with. Here, it is not in dispute. If you look at paragraph 55 of the third amended complaint, Quarles and Brady sought to defeat the exercise of the 89 option. Plaintiff takes issue now after the fact with the argument that they made to do so. And the argument that they made to do so, as is in the record and is recognized by Judge Reinhart when he ruled on the summary judgment, was that paragraph 5 of the 93 modification says, any future purchases of additional shares shall be based on terms subsequently agreed to by the parties. So what the record shows, notwithstanding the argument, is that we had a 1993 modification that changed the capital structure of the corporation because of a mutual mistake. It's in the exhibit to the complaint. And that's what Quarles and Brady was presented with. Isn't that, Mr. Trucco, really an issue of fact for a jury to determine whether or not, using the phrase, judgmental immunity, which other states have used, and you argue in your briefs, whether that was something done with a reasonable determination being made that that was the strategy that best served the client or whether, in not raising other things, that it was negligence. And is it really the issue here whether, as a matter of law, at this stage, based upon the complaint that was filed, it was appropriate to say there is no set of facts available that would allow a jury to make the determination in favor of the plaintiff? Your Honor, I suspect that there is a case, but that's not this case. And here is why. All right. First, as I mentioned, the Reinhart, Judge Reinhart's opinion mentioned the argument that Quarles and Brady made. Second, that went up to the Seventh Circuit. And the Seventh Circuit, and it's not based on the Seventh Circuit. This Court can make the same determination that the argument that Quarles and Brady made based on that 1993 modification agreement, and in particular paragraph 5, was a reasonable argument to make to defeat the goal they said we should have undertaken, which was to defeat the exercise of the 89 options. And in a 2615 motion, a trial judge, as Judge Kogan did twice and as Judge Lawrence did twice, is uniquely capable of deciding that as to whether or not one of several alternative arguments was appropriate. And what's important here, the argument that they say we should have made is inconsistent with the argument that was made, that section 5 or paragraph 5 of the 93 modification controlled. So unless a lawyer is obligated to raise every potential argument, even if that argument is inconsistent and dilutes and detracts from the principal argument that the lawyer makes. I'm sorry, I didn't mean to interrupt your sentence. That's okay. But I see where you're going, and I guess what I'm saying, we see alternative pleadings in a number of circumstances that would allow for a court or a trier of even if you were to decide that. I think that both of these briefs have done that at some point, where even if you believe this, here's another reason why we should win. And again, we go back to the stage of the pleading. It's not even a 2619 or a summary judgment that has additional discovery and facts. It's blown out of the water before anything is further developed. And that, frankly, is what troubles me, as you can probably appreciate. I'd like to address that, Your Honor, because I understand that. Mr. Olbermann argued the Gelsomino case. He's also cited the case of Spybeck and Gruss and other cases all decided on summary judgment. All first districts. Well, Gruss was a second district case. But importantly, those cases all predate Goldstein v. Lustig. But Goldstein was a different situation. Let's talk about Goldstein, because Goldstein really says that basically no matter what happened, this person was going to lose because he was in breach of his agreement in the first place. There were absolutely grounds for his termination. And one who is in that situation can't then rely upon the contract. I don't disagree that the Goldstein court reached that in a portion of its opinion. But in a sense the decision that you're citing, pure dicta given that. No, it is not, Your Honor. And here's why. Overt or dicta, as I understand it, is the fact when a court makes an offhand comment on something that is not a part or central to its decision. There's a difference with overt or dicta and judicial dictum. And the case of LeBron v. Gottlieb says that, and that's a Supreme Court case, that when a matter is before the court, the matter is argued and the matter is reached by the court. If it is not a hold-in, it is judicial dictum which is entitled to much weight and should be followed. So, and I respectfully don't agree that this is dictum because it was a hold-in on a 2615. And what's important on the facts, just as the scenario Mr. Oberman gave you, the client walks into the office, says I have a problem. Here is the agreement. The lawyer gives advice. Those are precisely the facts in the Goldstein case on which the First District said that is nothing more than an error of judgment. The question really becomes, even if everything you've just argued is true, how does a broad to apply Goldstein beyond the very peculiar facts of the case? And that would create, in my mind, some trouble even if what you said was true. So let me submit something to Your Honor. Let's assume for a moment that Quarles and Berry didn't attack and try to defeat the exercise of the 89 options. They went at it some completely different way. But it's undisputed that they did. They just quarreled with the argument that was made to do so. So under those circumstances, sure, there's a judgment between two different approaches. There is no dispute here as to what the goal was to defeat the exercise of the 89 options. But if you rely on judgmental immunity or the reasonableness of the decision, I think there's grounds to argue that if the facts show that the lawyers had considered all of these options, viewed them as either mutually exclusive, so you couldn't be raised in the alternative or found some reasoned decision that would preclude them from raising both of them, you might be in a different position than you would be in a stage where we really don't know what mental processes were followed by the lawyers at the time the decision to raise that argument was made. And that's where we get back to the stage of the pleadings issue that I frankly find troublesome. I appreciate that, Your Honor. And in terms of it, though, when you look at the stage of the pleadings, look what's in the third amended complaint. The entire history is there. The 1989 agreement is attached. The 1993 modification is attached. And from that, regardless of the characterizations, the Court and it is in the record of what the district court did that a reason and what the Seventh Circuit found, a reasonable argument was made. And going to Mr. Obermann's analogy and your concern about alternatives, he used the idea of a negligence case. In the Daly Center today, there's a defense lawyer that's going to make a decision in front of a jury to say, I'm going to attack this case on the basis of no breach of duty or no causation. And it's not going to argue damages. Because arguing the damages dilutes and detracts from the credibility and the strength of the argument. It conveys to the court, the court and jury, that you're not serious about it. And if that argument is made by that lawyer down the street and it's unsuccessful, and if the party represented deems to sue the lawyer for the argument that's made, then the lawyer can explain why he did what he did. And that can be judged. But the problem is, at this point, as a matter of law, determining that there are no sets of facts that could prove that is what causes me pause. I mean, even if I were to say reversed and remanded, I would not be saying, and the lawyers at Quarles and Brady clearly made a mistake. We're just not there yet. And what I would respond to, Your Honor, is that on the face of those exhibits attached to the third amended complaint, a manifestly reasonable argument was made that had it been successful would have completely defeated the exercise of the 1989 options. And in doing so was simply just what they're saying we should have made an inconsistent argument. And we're lawyers. Trial judges are lawyers. And this isn't a statute of limitations. Illinois law says when a statute of limitations is blown, you don't even need expert testimony for it. So this statute of limitations argument and analogy doesn't make sense. Here, making an inconsistent argument that detracts necessarily, and it's a reasonable inference from what's before the Court on the third amended complaint and the exhibits attached there, too. And nothing, and I'm not suggesting that the Seventh Circuit's idea is, supplants this Court's. I don't. But as recognized by the Seventh Circuit, I think this Court, as Judge Lawrence and Judge Kogan did, that the argument that was made was reasonable. And to address your concern, Justice Levin, about in a medical malpractice case, this would be a get-out-of-jail-free card just because someone says judgment. I submit respectfully. It seems like, if not a get-out-of-trial-free card, it's certainly a get-out-before-summary judgment. Well, let's just say judgment and, bang, you're done on a 615. Well, let's – I would submit that it's a little bit different in the medical malpractice arena because of the requirement of Section 2-622. So that where you don't have the trial court substituting a judgment for that of a medical professional, here we're talking about trial judges who are lawyers, who have lawyers come before them every day to make arguments. But haven't they usurped the fact-finding function in essence in this situation? I would submit not. And the reason I submit not is because on the facts of it, the argument that was made was reasonable. And unless that reasonable argument can be held to be beneath the standard of practice and going back to the medical malpractice situation, suppose a patient has a cancer and there are two ways to extirpate the tumor, and both within the standard of care, both within the standard of practice, two arguments, and the physician chose one. That's an instance, Your Honor, where it would be a judgment and an appropriate judgment is recognized by the law. But if a complaint alleged that the choice the doctor made was the wrong choice and when we judge a 615, we have to allow and adopt the arguments, it doesn't stand, even though there is an alternative treatment. Once we allege the treatment that was selected was improper, don't we have to, under the standards, agree with that? So I agree that the Court is constrained by the pleading. And if you look at paragraphs 74, 100, and 117 of the Third Amended Complaint, the plaintiff here never alleges that Quarles and Brady didn't exercise any judgment. They allege that there was, quote, no judgment to be exercised. And it's a material difference. It's a material difference. There's no positive fact alleged that says Quarles and Brady failed. They considered X and did Y. They should have done X. It's not alleged. All they say is there's no disadvantage to have done so and, therefore, there was, quote, no judgment to be exercised. And to answer Your Honor's point, that makes a material difference on the pleading that's before this panel. They don't allege we didn't do it. And in that instance, just as the trial court did, based on what I would submit as controlling precedent in Goldstein, determined under Section 2-615, that at most what we have is a hindsight criticism of a course of conduct that the lawyer recommended, one that was reasonable but wasn't successful. So if you – does that argument suggest that you would concede that had they made that allegation that there was a judgment but it wasn't made because they didn't consider this, that we would have a different case? If you assume for a moment as we must, because it was alleged that the argument wasn't made in the district court, okay, I would say to Your Honor that because that argument on this exercise of the 89 options is inconsistent with and detracts from an argument when you look at paragraph 5 of that 93 modification is a silver bullet. That agreement says any future sales of shares shall be upon the terms subsequently agreed to. That defeats the 89 option. Now, the fact that Judge Reinhart chose differently doesn't make that argument wrong. I don't think anyone claims that it does. And so – but the point is when you look at it on the face of the pleadings, it's a manifestly reasonable argument to make. And, by the way, as to the issue of ambiguity, allows for cross motions for summary judgment, allows for quick resolution, allows for certainty to clients in a business capacity to argue it as clear and ambiguous, clear and unambiguous as it appears in paragraph 5. So I do, I understand Your Honor's concerns. I think here, under the circumstances, taking into consideration that 89 option agreement with the 93 modification that the plaintiff is studiously avoiding, those were the facts pled, those were the facts presented, and the argument that was fashioned and was made was one that takes into consideration both of those documents and doesn't ignore one versus the other. When you look at those, you'll see that in that 1989 option agreement, they changed the capital structure when they did the 93 modification. But it was clear, based on those documents, that there was an idea that Mr. Curia could get up 49 percent of the shares in that second exercise. When he attempted to exercise, I think it was 176 shares, that got him to the 49 percent. So the plaintiff's construct here, I would suggest, is manifestly unreasonable because it reads out the 1993 modification. And if it were made to an apropos of the argument I'm making about detracting, the credibility of the lawyer who goes to a court and tries to convince the court of an argument while ignoring an operative transaction document, I think would,     I think that's a good argument. Does your argument suggest that one could never be held liable for failing to argue alternative grounds of defense? No. I'm not suggesting that. For example, a breach of contract with an alternative claim for a quantum merit when you are unsure of what the facts are and you properly plead on the alternative. Okay? I think an argument could be made that if you didn't do that, but that's alternative pleading as to which facts apply. Okay? That's not what we have here. So I am not suggesting that a bright-line rule that every time a lawyer makes a judgment, they cannot be second-guessed on the judgment. And I apologize for the use of the word second-guessed. They cannot be held responsible for the judgment. What I'm saying here is when the lawyer takes a path and makes an argument in an alternative claim, that's what he should have done, which was to defeat the 89 options. And the path the lawyer takes is based on plain language of the documents that are in front of that lawyer. And it's a manifestly reasonable argument when you look at that paragraph 5. I'm saying under those circumstances on a section 2-615, a trial judge is eminently capable of determining, based on all reasonable inferences in the plaintiff's  What I would suggest otherwise is to say that lawyers are automatons, that there is no judgment that goes into it. I think it is a reasonable inference to take from the pleadings that when a lawyer is presented with a complex set of facts, that that lawyer brings some judgment to bear on what to do and what to argue. And it would be a different case if we weren't seeking the same goal, that is, the defeat of the 89 options. Thank you. Mr. Oberman didn't address the issues of the ambiguity of the 2004 agreement. With respect to the issue of ambiguity, I touched on it briefly, simply the fact that there was, this was in the paragraph 5 language appropriate. With respect to the 2004 agreement, again, you can't ignore the 93 modification. The importance is in paragraph 10 that says that any transfer has to be based on and conditioned upon the written approval of the manufacturers. It's not alleged after four attempts that that written approval was achieved. Finally, I thank you for your time and I respectfully request that you affirm, Judge Lawrence, on the dismissal of the Third Amendment complaint. Thank you, Mr. Chairman. Thank you. Mr. Oberman? Well, I thought at the outset of Mr. Trucco's argument we were on the same case, but by the time he finished, I think he was arguing a case that was never briefed. He must have said 10 times that the argument that we say was left out negligently was inconsistent and detracted from the other argument. In other words, there was a tradeoff. You will not find any mention of that in any brief in this Court or in the trial court. He's never raised that argument before. We could never have met it. It was never briefed. It's totally inappropriate to now come in here in oral argument and say, oh, well, there was a tradeoff, there was a strategic reason, there was a tactical decision. It's not in the complaint and it's not in any brief. So I strongly object to that even being in this case. I don't know how this Court could evaluate it. Just on the basis of this, you'd have to go back and research it and study those documents yourself and see if what he says even makes sense. And I would only say that even if you put some weight on what he says, saying, well, you should, saying to Judge Reinhart, you look at the 93 thing about agreed to based on future agreements, but even if you don't agree, you can't get an option for 193 shares on an option that gave you a right to purchase 2009. That defeats it by itself. That's what we're saying. But I really think that I'm not going to respond because I'm not even prepared to go into what he said, except to say that it's just outside this record. And from what I do know of the record, it's not even an accurate argument. Two other quick points, Your Honors. He says that we never say in paragraph 74 of the other paragraphs, they didn't think about it. Well, how could we say that? You'd have a rule 137 problem for coming here and say, that lawyer didn't think. I don't know what he thought about it until I depose him. We say there was no thinking involved here because it was an obvious choice to raise the best defense. He says, you know, we're looking for a standard that requires the kitchen sink. That's obvious. It would be nonsense. The expert testimony we allege will be there is a reasonably careful lawyer would raise the best defense, not every defense, and we say this was the best. And the case law backs it up. The only other thing I would say about Goldstein, I'm tempted really not to proceed, but one of the interesting things about the Goldstein case is that this Court essentially said it was not an error that Mr. Lustig made the correct decision, i.e., it doesn't make any difference what you do, you're going to lose. So that there wasn't even an error in the judgment that was alleged to have been made. So it's a completely different case on the facts, and of course there was a pretty thorough factual record in that case. So unless the Court has any further questions, I thank the Court for your time. Thank you very much. The case will be taken under advisement. It was well-argued and well-briefed. Thank you. Thank you. We'll take a short recess. The Court will take a short recess.